Filed 2/18/16

# IN THE SUPREME COURT OF CALIFORNIA

TSVETANA YVANOVA, )
)
    Plaintiff and Appellant, )
) S218973
    v. )
) Ct.App. 2/1 B247188
NEW CENTURY MORTGAGE )
CORPORATION et al., )
) Los Angeles County
    Defendants and Respondents. ) Super. Ct. No. LC097218
_____ )

The collapse in 2008 of the housing bubble and its accompanying system of home loan securitization led, among other consequences, to a great national wave of loan defaults and foreclosures. One key legal issue arising out of the collapse was whether and how defaulting homeowners could challenge the validity of the chain of assignments involved in securitization of their loans. We granted review in this case to decide one aspect of that question: whether the borrower on a home loan secured by a deed of trust may base an action for wrongful foreclosure on allegations a purported assignment of the note and deed of trust to the foreclosing party bore defects rendering the assignment void.

The Court of Appeal held plaintiff Tsvetana Yvanova could not state a cause of action for wrongful foreclosure based on an allegedly void assignment because she lacked standing to assert defects in the assignment, to which she was not a

party.  We conclude, to the contrary, that because in a nonjudicial foreclosure only the original beneficiary of a deed of trust or its assignee or agent may direct the trustee to sell the property, an allegation that the assignment was void, and not merely voidable at the behest of the parties to the assignment, will support an action for wrongful foreclosure.

Our ruling in this case is a narrow one.  We hold only that a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment. We do not hold or suggest that a borrower may attempt to preempt a threatened nonjudicial foreclosure by a suit questioning the foreclosing party's right to proceed.  Nor do we hold or suggest that plaintiff in this case has alleged facts showing the assignment is void or that, to the extent she has, she will be able to prove those facts.  Nor, finally, in rejecting defendants' arguments on standing do we address any of the substantive elements of the wrongful foreclosure tort or the factual showing necessary to meet those elements.

### FACTUAL AND PROCEDURAL BACKGROUND

This case comes to us on appeal from the trial court's sustaining of a demurrer.  For purposes of reviewing a demurrer, we accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law.  We may also consider matters subject to judicial notice.  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)[1]  To determine whether

---

[1]     The superior court granted defendants' request for judicial notice of the recorded deed of trust, assignment of the deed of trust, substitution of trustee, notices of default and of trustee's sale, and trustee's deed upon sale.  The existence and facial contents of these recorded documents were properly noticed in the trial court under Evidence Code sections 452, subdivisions (c) and (h), and 453.  (See

*(footnote continued on next page)*

2

the trial court should, in sustaining the demurrer, have granted the plaintiff leave to amend, we consider whether on the pleaded and noticeable facts there is a reasonable possibility of an amendment that would cure the complaint's legal defect or defects.  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

In 2006, plaintiff executed a deed of trust securing a note for $483,000 on a residential property in Woodland Hills, Los Angeles County.  The lender, and beneficiary of the trust deed, was defendant New Century Mortgage Corporation (New Century). New Century filed for bankruptcy on April 2, 2007, and on August 1, 2008, it was liquidated and its assets were transferred to a liquidation trust.

On December 19, 2011, according to the operative complaint, New Century (despite its earlier dissolution) executed a purported assignment of the deed of trust to Deutsche Bank National Trust, as trustee of an investment loan trust the complaint identifies as "Msac-2007 Trust-He-1 Pass Thru Certificates."  We take notice of the recorded assignment, which is in the appellate record.  (See fn. 1, *ante*.)  As assignor the recorded document lists New Century; as assignee it lists Deutsche Bank National Trust Company (Deutsche Bank) "as trustee for the registered holder of Morgan Stanley ABS Capital I Inc. Trust 2007-HE1 Mortgage Pass-Through Certificates, Series 2007-HE1" (the Morgan Stanley investment

---

*(footnote continued from previous page)*

*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264–266.) Under Evidence Code section 459, subdivision (a), notice by this court is therefore mandatory.  We therefore take notice of their existence and contents, though not of disputed or disputable facts stated therein.  (See *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1102.)

trust).  The assignment states it was prepared by Ocwen Loan Servicing, LLC, which is also listed as the contact for both assignor and assignee and as the attorney in fact for New Century.  The assignment is dated December 19, 2011, and bears a notation that it was recorded December 30, 2011.

According to the complaint, the Morgan Stanley investment trust to which the deed of trust on plaintiff's property was purportedly assigned on December 19, 2011, had a closing date (the date by which all loans and mortgages or trust deeds must be transferred to the investment pool) of January 27, 2007.

On August 20, 2012, according to the complaint, Western Progressive, LLC, recorded two documents:  one substituting itself for Deutsche Bank as trustee, the other giving notice of a trustee's sale.  We take notice of a substitution of trustee, dated February 28, 2012, and recorded August 20, 2012, replacing Deutsche Bank with Western Progressive, LLC, as trustee on the deed of trust, and of a notice of trustee's sale dated August 16, 2012, and recorded August 20, 2012.

A recorded trustee's deed upon sale dated December 24, 2012, states that plaintiff's Woodland Hills property was sold at public auction on September 14, 2012.  The deed conveys the property from Western Progressive, LLC, as trustee, to the purchaser at auction, THR California LLC, a Delaware limited liability company.

Plaintiff's second amended complaint, to which defendants demurred, pleaded a single count for quiet title against numerous defendants including New Century, Ocwen Loan Servicing, LLC, Western Progressive, LLC, Deutsche Bank, Morgan Stanley Mortgage Capital, Inc., and the Morgan Stanley investment trust.  Plaintiff alleged the December 19, 2011, assignment of the deed of trust from New Century to the Morgan Stanley investment trust was void for two reasons:  New Century's assets had previously, in 2008, been transferred to a bankruptcy trustee; and the Morgan Stanley investment trust had closed to new

4

loans in 2007. (The demurrer, of course, does not admit the truth of this legal conclusion; we recite it here only to help explain how the substantive issues in this case were framed.) The superior court sustained defendants' demurrer without leave to amend, concluding on several grounds that plaintiff could not state a cause of action for quiet title.

The Court of Appeal affirmed the judgment for defendants on their demurrer. The pleaded cause of action for quiet title failed fatally, the court held, because plaintiff did not allege she had tendered payment of her debt. The court went on to discuss the question, on which it had sought and received briefing, of whether plaintiff could, on the facts alleged, amend her complaint to plead a cause of action for wrongful foreclosure.

On the wrongful foreclosure question, the Court of Appeal concluded leave to amend was not warranted. Relying on *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497 (*Jenkins*), the court held plaintiff's allegations of improprieties in the assignment of her deed of trust to Deutsche Bank were of no avail because, as an unrelated third party to that assignment, she was unaffected by such deficiencies and had no standing to enforce the terms of the agreements allegedly violated. The court acknowledged that plaintiff's authority, *Glaski v. Bank of America*, *supra*, 218 Cal.App.4th 1079 (*Glaski*), conflicted with *Jenkins* on the standing issue, but the court agreed with the reasoning of *Jenkins* and declined to follow *Glaski*.

We granted plaintiff's petition for review, limiting the issue to be briefed and argued to the following: "In an action for wrongful foreclosure on a deed of trust securing a home loan, does the borrower have standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly rendering the assignment void?"

5

## I. Deeds of Trust and Nonjudicial Foreclosure

A deed of trust to real property acting as security for a loan typically has three parties:  the trustor (borrower), the beneficiary (lender), and the trustee. "The trustee holds a power of sale.  If the debtor defaults on the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale." (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813.)  The nonjudicial foreclosure system is designed to provide the lender-beneficiary with an inexpensive and efficient remedy against a defaulting borrower, while protecting the borrower from wrongful loss of the property and ensuring that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.  (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.)

The trustee starts the nonjudicial foreclosure process by recording a notice of default and election to sell.  (Civ. Code, § 2924, subd. (a)(1).)[2]  After a three-month waiting period, and at least 20 days before the scheduled sale, the trustee may publish, post, and record a notice of sale.  (§§ 2924, subd. (a)(2), 2924f, subd. (b).)  If the sale is not postponed and the borrower does not exercise his or her rights of reinstatement or redemption, the property is sold at auction to the highest bidder.  (§ 2924g, subd. (a); *Jenkins*, *supra*, 216 Cal.App.4th at p. 509; *Moeller v. Lien*, *supra*, 25 Cal.App.4th at pp. 830–831.)  Generally speaking, the foreclosure sale extinguishes the borrower's debt; the lender may recover no deficiency.  (Code Civ. Proc., § 580d; *Dreyfuss v. Union Bank of California* (2000) 24 Cal.4th 400, 411.)

---

[2]    All further unspecified statutory references are to the Civil Code.

The trustee of a deed of trust is not a true trustee with fiduciary obligations, but acts merely as an agent for the borrower-trustor and lender-beneficiary. (*Biancalana v. T.D. Service Co.*, *supra*, 56 Cal.4th at p. 819; *Vournas v. Fidelity Nat. Tit. Ins. Co.* (1999) 73 Cal.App.4th 668, 677.)  While it is the trustee who formally initiates the nonjudicial foreclosure, by recording first a notice of default and then a notice of sale, the trustee may take these steps only at the direction of the person or entity that currently holds the note and the beneficial interest under the deed of trust—the original beneficiary or its assignee—or that entity's agent. (§ 2924, subd. (a)(1) [notice of default may be filed for record only by "[t]he trustee, mortgagee, or beneficiary"]; *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 334 [when borrower defaults on the debt, "the beneficiary may declare a default and make a demand on the trustee to commence foreclosure"]; *Santens v. Los Angeles Finance Co.* (1949) 91 Cal.App.2d 197, 202 [only a person entitled to enforce the note can foreclose on the deed of trust].)

Defendants emphasize, correctly, that a borrower can generally raise no objection to assignment of the note and deed of trust.  A promissory note is a negotiable instrument the lender may sell without notice to the borrower. (*Creative Ventures, LLC v. Jim Ward & Associates* (2011) 195 Cal.App.4th 1430, 1445–1446.)  The deed of trust, moreover, is inseparable from the note it secures, and follows it even without a separate assignment.  (§ 2936; *Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal.2d 284, 291; *U.S. v. Thornburg* (9th Cir. 1996) 82 F.3d 886, 892.)  In accordance with this general law, the note and deed of trust in this case provided for their possible assignment.

A deed of trust may thus be assigned one or multiple times over the life of the loan it secures.  But if the borrower defaults on the loan, only the current beneficiary may direct the trustee to undertake the nonjudicial foreclosure process. "[O]nly the 'true owner' or 'beneficial holder' of a Deed of Trust can bring to

7

completion a nonjudicial foreclosure under California law." (*Barrionuevo v. Chase Bank, N.A.* (N.D.Cal. 2012) 885 F.Supp.2d 964, 972; see *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1378 [bank and reconveyance company failed to establish they were current beneficiary and trustee, respectively, and therefore failed to show they "had authority to conduct the foreclosure sale"]; cf. *U.S. Bank Nat. Assn. v. Ibanez* (Mass. 2011) 941 N.E.2d 40, 51 [under Mass. law, only the original mortgagee or its assignee may conduct nonjudicial foreclosure sale].)

In itself, the principle that only the entity currently entitled to enforce a debt may foreclose on the mortgage or deed of trust securing that debt is not, or at least should not be, controversial. It is a "straightforward application[] of well-established commercial and real-property law: a party cannot foreclose on a mortgage unless it is the mortgagee (or its agent)." (Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title* (2013) 63 Duke L.J. 637, 640.) Describing the copious litigation arising out of the recent foreclosure crisis, a pair of commentators explained: "While plenty of uncertainty existed, one concept clearly emerged from litigation during the 2008-2012 period: in order to foreclose a mortgage by judicial action, one had to have the right to enforce the debt that the mortgage secured. It is hard to imagine how this notion could be controversial." (Whitman & Milner, *Foreclosing on Nothing: The Curious Problem of the Deed of Trust Foreclosure Without Entitlement to Enforce the Note* (2013) 66 Ark. L.Rev. 21, 23, fn. omitted.)

More subject to dispute is the question presented here: under what circumstances, if any, may the borrower challenge a nonjudicial foreclosure on the ground that the foreclosing party is not a valid assignee of the original lender? Put

another way, does the borrower have standing to challenge the validity of an assignment to which he or she was not a party?[3] We proceed to that issue.

## II. Borrower Standing to Challenge an Assignment as Void

A beneficiary or trustee under a deed of trust who conducts an illegal, fraudulent or willfully oppressive sale of property may be liable to the borrower for wrongful foreclosure. (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062; *Munger v. Moore* (1970) 11 Cal.App.3d 1, 7.)[4] A foreclosure initiated by one with no authority to do so is wrongful for purposes of

---

[3] Somewhat confusingly, both the purported assignee's authority to foreclose and the borrower's ability to challenge that authority have been framed as questions of "standing." (See, e.g., Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title*, *supra*, 63 Duke L.J. at p. 644 [discussing purported assignee's "standing to foreclose"]; *Jenkins*, *supra*, 216 Cal.App.4th at p. 515 [borrower lacks "standing to enforce [assignment] agreements" to which he or she is not a party]; *Bank of America Nat. Assn. v. Bassman FBT, LLC* (Ill.App. Ct. 2012) 981 N.E.2d 1, 7 ["Each party contends that the other lacks standing."].) We use the term here in the latter sense of a borrower's legal authority to challenge the validity of an assignment.

[4] It has been held that, at least when seeking to set aside the foreclosure sale, the plaintiff must also show prejudice and a tender of the amount of the secured indebtedness, or an excuse of tender. (*Chavez v. Indymac Mortgage Services*, *supra*, 219 Cal.App.4th at p. 1062.) Tender has been excused when, among other circumstances, the plaintiff alleges the foreclosure deed is facially void, as arguably is the case when the entity that initiated the sale lacked authority to do so. (*Ibid.*; *In re Cedano* (Bankr. 9th Cir. 2012) 470 B.R. 522, 529–530; *Lester v. J.P. Morgan Chase Bank* (N.D.Cal. 2013) 926 F.Supp.2d 1081, 1093; *Barrionuevo v. Chase Bank, N.A.*, *supra*, 885 F.Supp.2d 964, 969–970.) Our review being limited to the standing question, we express no opinion as to whether plaintiff Yvanova must allege tender to state a cause of action for wrongful foreclosure under the circumstances of this case. Nor do we discuss potential remedies for a plaintiff in Yvanova's circumstances; at oral argument, plaintiff's counsel conceded she seeks only damages. As to prejudice, we do not address it as an element of wrongful foreclosure. We do, however, discuss whether plaintiff has suffered a cognizable injury for standing purposes.

9

such an action. (*Barrionuevo v. Chase Bank, N.A.*, *supra*, 885 F.Supp.2d at pp. 973–974; *Ohlendorf v. American Home Mortgage Servicing* (E.D.Cal. 2010) 279 F.R.D. 575, 582–583.) As explained in part I, *ante*, only the original beneficiary, its assignee or an agent of one of these has the authority to instruct the trustee to initiate and complete a nonjudicial foreclosure sale. The question is whether and when a wrongful foreclosure plaintiff may challenge the authority of one who claims it by assignment.

In *Glaski*, *supra*, 218 Cal.App.4th 1079, 1094–1095, the court held a borrower may base a wrongful foreclosure claim on allegations that the foreclosing party acted without authority because the assignment by which it purportedly became beneficiary under the deed of trust was not merely voidable but void. Before discussing *Glaski*'s holdings and rationale, we review the distinction between void and voidable transactions.

A void contract is without legal effect. (Rest.2d Contracts, § 7, com. a.) "It binds no one and is a mere nullity." (*Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1362.) "Such a contract has no existence whatever. It has no legal entity for any purpose and neither action nor inaction of a party to it can validate it . . . ." (*Colby v. Title Ins. and Trust Co.* (1911) 160 Cal. 632, 644.) As we said of a fraudulent real property transfer in *First Nat. Bank of L. A. v. Maxwell* (1899) 123 Cal. 360, 371, " 'A void thing is as no thing.' "

A voidable transaction, in contrast, "is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance." (Rest.2d Contracts, § 7.) It may be declared void but is not void in itself. (*Little v. CFS Service Corp.*, *supra*, 188 Cal.App.3d at p. 1358.) Despite its defects, a voidable transaction, unlike a void one, is subject to ratification by the

10

parties. (Rest.2d Contracts, § 7; *Aronoff v. Albanese* (N.Y.App.Div. 1982) 446 N.Y.S.2d 368, 370.)

In *Glaski*, the foreclosing entity purportedly acted for the current beneficiary, the trustee of a securitized mortgage investment trust.[5] The plaintiff, seeking relief from the allegedly wrongful foreclosure, claimed his note and deed of trust had never been validly assigned to the securitized trust because the purported assignments were made after the trust's closing date. (*Glaski*, *supra*, 218 Cal.App.4th at pp. 1082–1087.)

The *Glaski* court began its analysis of wrongful foreclosure by agreeing with a federal district court that such a cause of action could be made out " 'where a party alleged not to be the true beneficiary instructs the trustee to file a Notice of Default and initiate nonjudicial foreclosure.' " (*Glaski*, *supra*, 218 Cal.App.4th at p. 1094, quoting *Barrionuevo v. Chase Bank, N.A.*, *supra*, 885 F.Supp.2d at p. 973.) But the wrongful foreclosure plaintiff, *Glaski* cautioned, must do more than assert a lack of authority to foreclose; the plaintiff must allege facts "show[ing] the defendant who invoked the power of sale was not the true beneficiary." (*Glaski*, at p. 1094.)

Acknowledging that a borrower's assertion that an assignment of the note and deed of trust is invalid raises the question of the borrower's standing to

---

[5] The mortgage securitization process has been concisely described as follows: "To raise funds for new mortgages, a mortgage lender sells pools of mortgages into trusts created to receive the stream of interest and principal payments from the mortgage borrowers. The right to receive trust income is parceled into certificates and sold to investors, called certificateholders. The trustee hires a mortgage servicer to administer the mortgages by enforcing the mortgage terms and administering the payments. The terms of the securitization trusts as well as the rights, duties, and obligations of the trustee, seller, and servicer are set forth in a Pooling and Servicing Agreement ('PSA')." (*BlackRock Financial Mgmt. v. Ambac Assur. Corp.* (2d Cir. 2012) 673 F.3d 169, 173.)

11

challenge an assignment to which the borrower is not a party, the *Glaski* court cited several federal court decisions for the proposition that a borrower has standing to challenge such an assignment as void, though not as voidable. (*Glaski*, *supra*, 218 Cal.App.4th at pp. 1094–1095.) Two of these decisions, *Culhane v. Aurora Loan Services of Nebraska* (1st Cir. 2013) 708 F.3d 282 (*Culhane*) and *Reinagel v. Deutsche Bank Nat. Trust Co.* (5th Cir. 2013) 735 F.3d 220 (*Reinagel*),[6] discussed standing at some length; we will examine them in detail in a moment.

*Glaski* adopted from the federal decisions and a California treatise the view that "a borrower can challenge an assignment of his or her note and deed of trust if the defect asserted would *void* the assignment" not merely render it voidable. (*Glaski*, *supra*, 218 Cal.App.4th at p. 1095.) Cases holding that a borrower may never challenge an assignment because the borrower was neither a party to nor a third party beneficiary of the assignment agreement " 'paint with too broad a brush' " by failing to distinguish between void and voidable agreements. (*Ibid.*, quoting *Culhane*, *supra*, 708 F.3d at p. 290.)

The *Glaski* court went on to resolve the question of whether the plaintiff had pled a defect in the chain of assignments leading to the foreclosing party that would, if true, render one of the necessary assignments void rather than voidable. (*Glaski*, *supra*, 218 Cal.App.4th at p. 1095.) On this point, *Glaski* held allegations that the plaintiff's note and deed of trust were purportedly transferred into the trust after the trust's closing date were sufficient to plead a void assignment and hence to establish standing. (*Glaski*, at pp. 1096–1098.) This last holding of *Glaski* is not before us. On granting plaintiff's petition for review, we limited the scope of

---

[6] The version of *Reinagel* cited in *Glaski*, published at 722 F.3d 700, was amended on rehearing and superseded by *Reinagel, supra*, 735 F.3d 220.

12

our review to whether "the borrower [has] standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly rendering the assignment void." We did not include in our order the question of whether a postclosing date transfer into a New York securitized trust is void or merely voidable, and though the parties' briefs address it, we express no opinion on the question here.

Returning to the question that is before us, we consider in more detail the authority *Glaski* relied on for its standing holding. In *Culhane*, a Massachusetts home loan borrower sought relief from her nonjudicial foreclosure on the ground that the assignment by which Aurora Loan Services of Nebraska (Aurora) claimed authority to foreclose—a transfer of the mortgage from Mortgage Electronic Registration Systems, Inc. (MERS),[7] to Aurora—was void because MERS never properly held the mortgage. (*Culhane*, *supra*, 708 F.3d at pp. 286–288, 291.)

Before addressing the merits of the plaintiff's allegations, the *Culhane* court considered Aurora's contention the plaintiff lacked standing to challenge the assignment of her mortgage from MERS to Aurora. On this question, the court first concluded the plaintiff had a sufficient personal stake in the outcome, having shown a concrete and personalized injury resulting from the challenged assignment: "The action challenged here relates to Aurora's right to foreclose by

---

[7] As the *Culhane* court explained, MERS was formed by a consortium of residential mortgage lenders and investors to streamline the transfer of mortgage loans and thereby facilitate their securitization. A member lender may name MERS as mortgagee on a loan the member originates or owns; MERS acts solely as the lender's "nominee," having legal title but no beneficial interest in the loan. When a loan is assigned to another MERS member, MERS can execute the transfer by amending its electronic database. When the loan is assigned to a nonmember, MERS executes the assignment and ends its involvement. (*Culhane*, *supra*, 708 F.3d at p. 287.)

13

virtue of the assignment from MERS. The identified harm—the foreclosure—can be traced directly to Aurora's exercise of the authority purportedly delegated by the assignment." (*Culhane*, *supra*, 708 F.3d at pp. 289–290.)

*Culhane* next considered whether the prudential principle that a litigant should not be permitted to assert the rights and interest of another dictates that borrowers lack standing to challenge mortgage assignments as to which they are neither parties nor third party beneficiaries. (*Culhane*, *supra*, 708 F.3d at p. 290.) Two aspects of Massachusetts law on nonjudicial foreclosure persuaded the court such a broad rule is unwarranted. First, only the mortgagee (that is, the original lender or its assignee) may exercise the power of sale,[8] and the borrower is entitled to relief from foreclosure by an unauthorized party. (*Culhane*, at p. 290.) Second, in a nonjudicial foreclosure the borrower has no direct opportunity to challenge the foreclosing entity's authority in court. Without standing to sue for relief from a wrongful foreclosure, "a Massachusetts mortgagor would be deprived of a means to assert her legal protections . . . ." (*Ibid.*) These considerations led the *Culhane* court to conclude "a mortgagor has standing to challenge the assignment of a mortgage on her home to the extent that such a challenge is necessary to contest a foreclosing entity's status qua mortgagee." (*Id.* at p. 291.)

The court immediately cautioned that its holding was limited to allegations of a *void* transfer. If, for example, the assignor had no interest to assign or had no authority to make the particular assignment, "a challenge of this sort would be sufficient to refute an assignee's status qua mortgagee." (*Culhane*, *supra*, 708 F.3d at p. 291.) But where the alleged defect in an assignment would "render it

---

[8]     Massachusetts General Laws chapter 183, section 21, similarly to our Civil Code section 2924, provides that the power of sale in a mortgage may be exercised by "the mortgagee or his executors, administrators, successors or assigns."

merely voidable at the election of one party but otherwise effective to pass legal title," the borrower has no standing to challenge the assignment on that basis. (*Ibid.*)**9**

In *Reinagel*, upon which the *Glaski* court also relied, the federal court held that under Texas law borrowers defending against a judicial foreclosure have standing to " 'challenge the chain of assignments by which a party claims a right to foreclose.' " (*Reinagel*, *supra*, 735 F.3d at p. 224.) Though Texas law does not allow a nonparty to a contract to enforce the contract unless he or she is an intended third-party beneficiary, the borrowers in this situation "are not attempting to enforce the terms of the instruments of assignment; to the contrary, they urge that the assignments are void ab initio." (*Id.* at p. 225.)

Like *Culhane*, *Reinagel* distinguished between defects that render a transaction void and those that merely make it voidable at a party's behest. "Though 'the law is settled' in Texas that an obligor cannot defend against an assignee's efforts to enforce the obligation on a ground that merely renders the assignment voidable at the election of the assignor, Texas courts follow the majority rule that the obligor *may* defend 'on any ground which renders the assignment void.' " (*Reinagel*, *supra*, 735 F.3d at p. 225.) The contrary rule would allow an institution to foreclose on a borrower's property "though it is not a valid party to the deed of trust or promissory note . . . ." (*Ibid.*)**10**

---

**9** On the merits, the *Culhane* court rejected the plaintiff's claim that MERS never properly held her mortgage, giving her standing to challenge the assignment from MERS to Aurora as void (*Culhane*, *supra*, 708 F.3d at p. 291); the court held MERS's role as the lender's nominee allowed it to hold and assign the mortgage under Massachusetts law. (*Id.* at pp. 291–293.)

**10** The *Reinagel* court nonetheless rejected the plaintiffs' claim of an invalid assignment after the closing date of a securitized trust, observing they could not enforce the terms of trust because they were not intended third-party beneficiaries.

*(footnote continued on next page)*

*Jenkins*, on which the Court of Appeal below relied, was decided close in time to *Glaski* (neither decision discusses the other) but reaches the opposite conclusion on standing. In *Jenkins*, the plaintiff sued to prevent a foreclosure sale that had not yet occurred, alleging the purported beneficiary who sought the sale held no security interest because a purported transfer of the loan into a securitized trust was made in violation of the pooling and servicing agreement that governed the investment trust. (*Jenkins*, *supra*, 216 Cal.App.4th at pp. 504–505.)

The appellate court held a demurrer to the plaintiff's cause of action for declaratory relief was properly sustained for two reasons. First, *Jenkins* held California law did not permit a "preemptive judicial action[] to challenge the right, power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure." (*Jenkins*, *supra*, 216 Cal.App.4th at p. 511.) Relying primarily on *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, *Jenkins* reasoned that such preemptive suits are inconsistent with California's comprehensive statutory scheme for nonjudicial foreclosure; allowing such a lawsuit " 'would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures.' " (*Jenkins*, at p. 513, quoting *Gomes* at p. 1155.)

This aspect of *Jenkins*, disallowing the use of a lawsuit to preempt a nonjudicial foreclosure, is not within the scope of our review, which is limited to a

*(footnote continued from previous page)*

The court's holding appears, however, to rest at least in part on its conclusion that a violation of the closing date "would not render the assignments void" but merely allow them to be avoided at the behest of a party or third-party beneficiary. (*Reinagel*, *supra*, 735 F.3d at p. 228.) As discussed above in relation to *Glaski*, that question is not within the scope of our review.

16

borrower's standing to challenge an assignment in an action seeking remedies for *wrongful foreclosure*. As framed by the proceedings below, the concrete question in the present case is whether plaintiff should be permitted to amend her complaint to seek redress, in a wrongful foreclosure count, for the trustee's sale that has already taken place. We do not address the distinct question of whether, or under what circumstances, a borrower may bring an action for injunctive or declaratory relief to prevent a foreclosure sale from going forward.

Second, as an alternative ground, *Jenkins* held a demurrer to the declaratory relief claim was proper because the plaintiff had failed to allege an actual controversy as required by Code of Civil Procedure section 1060. (*Jenkins*, *supra*, 216 Cal.App.4th at p. 513.) The plaintiff did not dispute that her loan could be assigned or that she had defaulted on it and remained in arrears. (*Id.* at p. 514.) Even if one of the assignments of the note and deed of trust was improper in some respect, the appellate court reasoned, "Jenkins is not the victim of such invalid transfer[] because her obligations under the note remained unchanged. Instead, the true victim may be an individual or entity that believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of its interest in the note." (*Id.* at p. 515.) In particular, the plaintiff could not complain about violations of the securitized trust's transfer rules: "As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, Jenkins lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions." (*Ibid.*)

For its conclusion on standing, *Jenkins* cited *In re Correia* (Bankr. 1st Cir. 2011) 452 B.R. 319. The borrowers in that case challenged a foreclosure on the ground that the assignment of their mortgage into a securitized trust had not been made in accordance with the trust's pooling and servicing agreement (PSA). (*Id.*

17

at pp. 321–322.) The appellate court held the borrowers "lacked standing to challenge the mortgage's chain of title under the PSA." (*Id.* at p. 324.) Being neither parties nor third party beneficiaries of the pooling agreement, they could not complain of a failure to abide by its terms. (*Ibid.*)

*Jenkins* also cited *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, which primarily addressed the *merits* of a foreclosure challenge, concluding the borrowers had adduced no facts on which they could allege an assignment from MERS to another beneficiary was invalid. (*Id.* at pp. 1502–1506.) In reaching the merits, the court did not explicitly discuss the plaintiffs' standing to challenge the assignment. In a passage cited in *Jenkins*, however, the court observed that the plaintiffs, in order to state a wrongful foreclosure claim, needed to show prejudice, and they could not do so because the challenged assignment did not change their obligations under the note. (*Herrera,* at pp. 1507–1508.) Even if MERS lacked the authority to assign the deed of trust, "the true victims were not plaintiffs but the lender." (*Id.* at p. 1508.)

On the narrow question before us—whether a wrongful foreclosure plaintiff may challenge an assignment to the foreclosing entity as void—we conclude *Glaski* provides a more logical answer than *Jenkins*. As explained in part I, *ante*, only the entity holding the beneficial interest under the deed of trust—the original lender, its assignee, or an agent of one of these—may instruct the trustee to commence and complete a nonjudicial foreclosure. (§ 2924, subd. (a)(1); *Barrionuevo v. Chase Bank, N.A.*, *supra*, 885 F.Supp.2d at p. 972.) If a purported assignment necessary to the chain by which the foreclosing entity claims that power is absolutely void, meaning of no legal force or effect whatsoever (*Colby v. Title Ins. and Trust Co.*, *supra*, 160 Cal. at p. 644; Rest.2d Contracts, § 7, com. a), the foreclosing entity has acted without legal authority by pursuing a trustee's sale,

18

and such an unauthorized sale constitutes a wrongful foreclosure. (*Barrionuevo v. Chase Bank, N.A.*, at pp. 973–974.)

Like the Massachusetts borrowers considered in *Culhane*, whose mortgages contained a power of sale allowing for nonjudicial foreclosure, California borrowers whose loans are secured by a deed of trust with a power of sale may suffer foreclosure without judicial process and thus "would be deprived of a means to assert [their] legal protections" if not permitted to challenge the foreclosing entity's authority through an action for wrongful foreclosure. (*Culhane*, *supra*, 708 F.3d at p. 290.) A borrower therefore "has standing to challenge the assignment of a mortgage on her home to the extent that such a challenge is necessary to contest a foreclosing entity's status qua mortgagee" (*id.* at p. 291)— that is, as the current holder of the beneficial interest under the deed of trust. (Accord, *Wilson v. HSBC Mortgage Servs., Inc.* (1st Cir. 2014) 744 F.3d 1, 9 ["A homeowner in Massachusetts—even when not a party to or third party beneficiary of a mortgage assignment—has standing to challenge that assignment as void because success on the merits would prove the purported assignee is not, in fact, the mortgagee and therefore lacks any right to foreclose on the mortgage."].)[11]

*Jenkins* and other courts denying standing have done so partly out of concern with allowing a borrower to enforce terms of a transfer agreement to which the borrower was not a party. In general, California law does not give a party

---

[11]    We cite decisions on federal court standing only for their persuasive value in determining what California standing law should be, without any assumption that standing in the two systems is identical. The California Constitution does not impose the same " 'case-or-controversy' " limit on state courts' jurisdiction as article III of the United States Constitution does on federal courts. (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1117, fn. 13.)

19

personal standing to assert rights or interests belonging solely to others.[12]  (See Code Civ. Proc., § 367 [action must be brought by or on behalf of the real party in interest]; *Jasmine Networks, Inc. v. Superior Court* (2009) 180 Cal.App.4th 980, 992.)  When an assignment is merely voidable, the power to ratify or avoid the transaction lies solely with the parties to the assignment; the transaction is not void unless and until one of the parties takes steps to make it so.  A borrower who challenges a foreclosure on the ground that an assignment to the foreclosing party bore defects rendering it voidable could thus be said to assert an interest belonging solely to the parties to the assignment rather than to herself.

When the plaintiff alleges a *void* assignment, however, the *Jenkins* court's concern with enforcement of a third party's interests is misplaced.  Borrowers who challenge the foreclosing party's authority on the grounds of a void assignment "are not attempting to enforce the terms of the instruments of assignment; to the contrary, they urge that the assignments are void ab initio."  (*Reinagel*, *supra*, 735 F.3d at p. 225; accord, *Mruk v. Mortgage Elec. Registration Sys., Inc.* (R.I. 2013) 82 A.3d 527, 536 [borrowers challenging an assignment as void "are not attempting to assert the rights of one of the contracting parties; instead, the homeowners are asserting their own rights not to have their homes unlawfully foreclosed upon"].)

Unlike a voidable transaction, a void one cannot be ratified or validated by the parties to it even if they so desire.  (*Colby v. Title Ins. and Trust Co.*, *supra*, 160 Cal. at p. 644; *Aronoff v. Albanese*, *supra*, 446 N.Y.S.2d at p. 370.)  Parties to

---

[12]     In speaking of *personal* standing to sue, we set aside such doctrines as taxpayer standing to seek injunctive relief (see Code Civ. Proc., § 526a) and " ' "public right/public duty" ' " standing to seek a writ of mandate (see *Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 166).

a securitization or other transfer agreement may well wish to ratify the transfer agreement despite any defects, but no ratification is possible if the assignment is void ab initio. In seeking a finding that an assignment agreement was void, therefore, a plaintiff in Yvanova's position is not asserting the interests of parties to the assignment; she is asserting her own interest in limiting foreclosure on her property to those with legal authority to order a foreclosure sale. This, then, is not a situation in which standing to sue is lacking because its "sole object . . . is to settle rights of third persons who are not parties." (*Golden Gate Bridge etc. Dist. v. Felt* (1931) 214 Cal. 308, 316.)

Defendants argue a borrower who is in default on his or her loan suffers no prejudice from foreclosure by an unauthorized party, since the actual holder of the beneficial interest on the deed of trust could equally well have foreclosed on the property. As the *Jenkins* court put it, when an invalid transfer of a note and deed of trust leads to foreclosure by an unauthorized party, the "victim" is not the borrower, whose obligations under the note are unaffected by the transfer, but "an individual or entity that believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of its interest in the note." (*Jenkins*, *supra,* 216 Cal.App.4th at p. 515; see also *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 85 [borrowers had no standing to challenge assignment by MERS where they do not dispute they are in default and "there is no reason to believe . . . the original lender would have refrained from foreclosure in these circumstances"]; *Fontenot v. Wells Fargo Bank, N.A.*, *supra*, 198 Cal.App.4th at p. 272 [wrongful foreclosure plaintiff could not show prejudice from allegedly invalid assignment by MERS as the assignment "merely substituted one creditor for another, without changing her obligations under the note"].)

In deciding the limited question on review, we are concerned only with prejudice in the sense of an injury sufficiently concrete and personal to provide standing, not with prejudice as a possible element of the wrongful foreclosure tort. (See fn. 4, *ante*.) As it relates to standing, we disagree with defendants' analysis of prejudice from an illegal foreclosure. A foreclosed-upon borrower clearly meets the general standard for standing to sue by showing an invasion of his or her legally protected interests (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 175)—the borrower has lost ownership to the home in an allegedly illegal trustee's sale. (See *Culhane*, *supra*, 708 F.3d at p. 289 [foreclosed-upon borrower has sufficient personal stake in action against foreclosing entity to meet federal standing requirement].) Moreover, the bank or other entity that ordered the foreclosure would not have done so absent the allegedly void assignment. Thus "[t]he identified harm—the foreclosure—can be traced directly to [the foreclosing entity's] exercise of the authority purportedly delegated by the assignment." (*Culhane*, at p. 290.)

Nor is it correct that the borrower has no cognizable interest in the identity of the party enforcing his or her debt. Though the borrower is not entitled to object to an assignment of the promissory note, he or she is obligated to pay the debt, or suffer loss of the security, only to a person or entity that has actually been assigned the debt. (See *Cockerell v. Title Ins. & Trust Co., supra,* 42 Cal.2d at p. 292 [party claiming under an assignment must prove fact of assignment].) The borrower owes money not to the world at large but to a particular person or institution, and only the person or institution entitled to payment may enforce the debt by foreclosing on the security.

It is no mere "procedural nicety," from a contractual point of view, to insist that only those with authority to foreclose on a borrower be permitted to do so. (Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of*

22

*Mortgage Title*, *supra*, 63 Duke L.J. at p. 650.) "Such a view fundamentally misunderstands the mortgage contract. The mortgage contract is not simply an agreement that the home may be sold upon a default on the loan. Instead, it is an agreement that if the homeowner defaults on the loan, *the mortgagee* may sell the property pursuant to the requisite legal procedure." (*Ibid.*, italics added and omitted.)

The logic of defendants' no-prejudice argument implies that *anyone*, even a stranger to the debt, could declare a default and order a trustee's sale—and the borrower would be left with no recourse because, after all, he or she owed the debt to *someone*, though not to the foreclosing entity. This would be an "odd result" indeed. (*Reinagel*, *supra*, 735 F.3d at p. 225.) As a district court observed in rejecting the no-prejudice argument, "[b]anks are neither private attorneys general nor bounty hunters, armed with a roving commission to seek out defaulting homeowners and take away their homes in satisfaction of some other bank's deed of trust." (*Miller v. Homecomings Financial, LLC* (S.D.Tex. 2012) 881 F.Supp.2d 825, 832.)

Defendants note correctly that a plaintiff in Yvanova's position, having suffered an allegedly unauthorized nonjudicial foreclosure of her home, need not now fear another creditor coming forward to collect the debt. The home can only be foreclosed once, and the trustee's sale extinguishes the debt. (Code Civ. Proc., § 580d; *Dreyfuss v. Union Bank of California*, *supra*, 24 Cal.4th at p. 411.) But as the Attorney General points out in her amicus curiae brief, a holding that *anyone* may foreclose on a defaulting home loan borrower would multiply the risk for homeowners that they might face a foreclosure at some point in the life of their loans. The possibility that multiple parties could each foreclose at some time, that is, increases the borrower's overall risk of foreclosure.

Defendants suggest that to establish prejudice the plaintiff must allege and prove that the true beneficiary under the deed of trust would have refrained from foreclosing on the plaintiff's property. Whatever merit this rule would have as to prejudice as an element of the wrongful foreclosure tort, it misstates the type of injury required for standing. A homeowner who has been foreclosed on by one with no right to do so has suffered an injurious invasion of his or her legal rights at the foreclosing entity's hands. No more is required for standing to sue. (*Angelucci v. Century Supper Club*, *supra*, 41 Cal.4th at p. 175.)

Neither *Caulfield v. Sanders* (1861) 17 Cal. 569 nor *Seidell v. Tuxedo Land Co.* (1932) 216 Cal. 165, upon which defendants rely, holds or implies a home loan borrower may not challenge a foreclosure by alleging a void assignment. In the first of these cases, we held a debtor on a contract for printing and advertising could not defend against collection of the debt on the ground it had been assigned without proper consultation among the assigning partners and for nominal consideration: "It is of no consequence to the defendant, as it in no respect affects his liability, whether the transfer was made at one time or another, or with or without consideration, or by one or by all the members of the firm." (*Caulfield v. Sanders*, at p. 572.) In the second, we held landowners seeking to enjoin a foreclosure on a deed of trust to their land could not do so by challenging the validity of an assignment of the promissory note the deed of trust secured. (*Seidell v. Tuxedo Land Co.*, at pp. 166, 169–170.) We explained that the assignment was made by an agent of the beneficiary, and that despite the landowner's claim the agent lacked authority for the assignment, the beneficiary "is not now complaining." (*Id.* at p. 170.) Neither decision discusses the distinction between allegedly void and merely voidable, and neither negates a borrower's ability to challenge an assignment of his or her debt as void.

For these reasons, we conclude *Glaski*, *supra*, 218 Cal.App.4th 1079, was correct to hold a wrongful foreclosure plaintiff has standing to claim the foreclosing entity's purported authority to order a trustee's sale was based on a void assignment of the note and deed of trust. *Jenkins*, *supra*, 216 Cal.App.4th 497, spoke too broadly in holding a borrower lacks standing to challenge an assignment of the note and deed of trust to which the borrower was neither a party nor a third party beneficiary. *Jenkins*'s rule may hold as to claimed defects that would make the assignment merely voidable, but not as to alleged defects rendering the assignment absolutely void.[13]

In embracing *Glaski*'s rule that borrowers have standing to challenge assignments as void, but not as voidable, we join several courts around the nation. (*Wilson v. HSBC Mortgage Servs., Inc.*, *supra*, 744 F.3d at p. 9; *Reinagel*, *supra*, 735 F.3d at pp. 224–225; *Woods v. Wells Fargo Bank, N.A.* (1st Cir. 2013) 733 F.3d 349, 354; *Culhane*, *supra*, 708 F.3d at pp. 289–291; *Miller v. Homecomings Financial, LLC*, *supra*, 881 F.Supp.2d at pp. 831–832; *Bank of America Nat. Assn. v. Bassman FBT, LLC*, *supra*, 981 N.E.2d at pp. 7–8; *Pike v. Deutsche Bank Nat. Trust Co.* (N.H. 2015) 121 A.3d 279, 281; *Mruk v. Mortgage Elec. Registration Sys., Inc.*, *supra*, 82 A.3d at pp. 534–536; *Dernier v. Mortgage Network, Inc.* (Vt. 2013) 87 A.3d 465, 473.) Indeed, as commentators on the issue have stated: "[C]ourts generally permit challenges to assignments if such challenges would prove that the assignments were void as opposed to voidable." (Zacks & Zacks,

---

[13] We disapprove *Jenkins v. JPMorgan Chase Bank, N.A.*, *supra*, 216 Cal.App.4th 497, *Siliga v. Mortgage Electronic Registration Systems, Inc.*, *supra*, 219 Cal.App.4th 75, *Fontenot v. Wells Fargo Bank, N.A.*, *supra*, 198 Cal.App.4th 256, and *Herrera v. Federal National Mortgage Assn.*, *supra*, 205 Cal.App.4th 1495, to the extent they held borrowers lack standing to challenge an assignment of the deed of trust as void.

*Not a Party: Challenging Mortgage Assignments* (2014) 59 St. Louis U. L.J. 175, 180.)

That several federal courts applying California law have, largely in unreported decisions, agreed with *Jenkins* and declined to follow *Glaski* does not alter our conclusion. Neither *Khan v. Recontrust Co.* (N.D.Cal. 2015) 81 F.Supp.3d 867 nor *Flores v. EMC Mort. Co.* (E.D.Cal. 2014) 997 F.Supp.2d 1088 adds much to the discussion. In *Khan*, the district court found the borrower, as a nonparty to the pooling and servicing agreement, lacked standing to challenge a foreclosure on the basis of an unspecified flaw in the loan's securitization; the court's opinion does not discuss the distinction between a void assignment and a merely voidable one. (*Khan v. Recontrust Co.*, *supra*, 81 F.Supp.3d at pp. 872–873.) In *Flores*, the district court, considering a wrongful foreclosure complaint that lacked sufficient clarity in its allegations including identification of the assignment or assignments challenged, the district court quoted and followed *Jenkins*'s reasoning on the borrower's lack of standing to enforce an agreement to which he or she is not a party, without addressing the application of this reasoning to allegedly void assignments. (*Flores v. EMC Mort. Co.*, *supra*, at pp. 1103–1105.)

Similarly, the unreported federal decisions applying California law largely fail to grapple with *Glaski*'s distinction between void and voidable assignments and tend merely to repeat *Jenkins*'s arguments that a borrower, as a nonparty to an assignment, may not enforce its terms and cannot show prejudice when in default on the loan, arguments we have found insufficient with regard to allegations of void assignments. While unreported federal court decisions may be cited in California as persuasive authority (*Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736, 744, fn. 3), in this instance they lack persuasive value.

26

Defendants cite the decision in *Rajamin v. Deutsche Bank Nat. Trust Co.* (2nd Cir. 2014) 757 F.3d 79 (*Rajamin*), as a "rebuke" of *Glaski*. *Rajamin*'s expressed disagreement with *Glaski*, however, was on the question whether, under New York law, an assignment to a securitized trust made after the trust's closing date is void or merely voidable. (*Rajamin*, at p. 90.) As explained earlier, that question is outside the scope of our review and we express no opinion as to *Glaski*'s correctness on the point.

The *Rajamin* court did, in an earlier discussion, state generally that borrowers lack standing to challenge an assignment as violative of the securitized trust's pooling and servicing agreement (*Rajamin*, *supra*, 757 F.3d at pp. 85–86), but the court in that portion of its analysis did not distinguish between void and voidable assignments. In a later portion of its analysis, the court "assum[ed] that 'standing exists for challenges that contend that the assigning party never possessed legal title,' " a defect the plaintiffs claimed made the assignments void (*id.* at p. 90), but concluded the plaintiffs had not properly alleged facts to support their voidness theory (*id.* at pp. 90–91).

Nor do *Kan v. Guild Mortgage Co.*, *supra*, 230 Cal.App.4th 736, and *Siliga v. Mortgage Electronic Registration Systems, Inc.*, *supra*, 219 Cal.App.4th 75 (*Siliga*), which defendants also cite, persuade us *Glaski* erred in finding borrower standing to challenge an assignment as void. The *Kan* court distinguished *Glaski* as involving a postsale wrongful foreclosure claim, as opposed to the preemptive suits involved in *Jenkins* and *Kan* itself. (*Kan*, at pp. 743–744.) On standing, the *Kan* court noted the federal criticism of *Glaski* and our grant of review in the present case, but found "no reason to wade into the issue of whether *Glaski* was correctly decided, because the opinion has no direct applicability to this preforeclosure action." (*Kan*, at p. 745.)

27

*Siliga*, similarly, followed *Jenkins* in disapproving a preemptive lawsuit. (*Siliga*, *supra*, 219 Cal.App.4th at p. 82.) Without discussing *Glaski*, the *Siliga* court also held the borrower plaintiffs failed to show any prejudice from, and therefore lacked standing to challenge, the assignment of their deed of trust to the foreclosing entity. (*Siliga*, at p. 85.) As already explained, this prejudice analysis misses the mark in the wrongful foreclosure context. When a property has been sold at a trustee's sale at the direction of an entity with no legal authority to do so, the borrower has suffered a cognizable injury.

In further support of a borrower's standing to challenge the foreclosing party's authority, plaintiff points to provisions of the recent legislation known as the California Homeowner Bill of Rights, enacted in 2012 and effective only after the trustee's sale in this case. (See *Leuras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 86, fn. 14.)[14] Having concluded without reference to this legislation that borrowers do have standing to challenge an assignment as void, we need not decide whether the new provisions provide additional support for that holding.

---

[14]    Plaintiff cites newly added provisions that prohibit any entity from initiating a foreclosure process "unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest" (§ 2924, subd. (a)(6)); require the loan servicer to inform the borrower, before a notice of default is filed, of the borrower's right to request copies of any assignments of the deed of trust "required to demonstrate the right of the mortgage servicer to foreclose" (§ 2923.55, subd. (b)(1)(B)(iii)); and require the servicer to ensure the documentation substantiates the right to foreclose (§ 2924.17, subd. (b)). The legislative history indicates the addition of these provisions was prompted in part by reports that nonjudicial foreclosure proceedings were being initiated on behalf of companies with no authority to foreclose. (See Sen. Rules Com., Conference Rep. on Sen. Bill No. 900 (2011–2012 Reg. Sess.) as amended June 27, 2012, p. 26.)

Plaintiff has alleged that her deed of trust was assigned to the Morgan Stanley investment trust in December 2011, several years after both the securitized trust's closing date and New Century's liquidation in bankruptcy, a defect plaintiff claims renders the assignment void.   Beyond their general claim a borrower has no standing to challenge an assignment of the deed of trust, defendants make several arguments against allowing plaintiff to plead a cause of action for wrongful foreclosure based on this allegedly void assignment.

Principally, defendants argue the December 2011 assignment of the deed of trust to Deutsche Bank, as trustee for the investment trust, was merely "confirmatory" of a 2007 assignment that had been executed in blank (i.e., without designation of assignee) when the loan was added to the trust's investment pool. The purpose of the 2011 recorded assignment, defendants assert, was merely to comply with a requirement in the trust's pooling and servicing agreement that documents be recorded before foreclosures are initiated.   An amicus curiae supporting defendants' position asserts that the general practice in home loan securitization is to initially execute assignments of loans and mortgages or deeds of trust to the trustee in blank and not to record them; the mortgage or deed of trust is subsequently endorsed by the trustee and recorded if and when state law requires.  (See *Rajamin*, *supra*, 757 F.3d at p. 91.)  This claim, which goes not to the legal issue of a borrower's standing to sue for wrongful foreclosure based on a void assignment, but rather to the factual question of when the assignment in this case was actually made, is outside the limited scope of our review.  The same is true of defendants' remaining factual claims, including that the text of the investment trust's pooling and servicing agreement demonstrates plaintiff's deed of trust was assigned to the trust before it closed.

## CONCLUSION

We conclude a home loan borrower has standing to claim a nonjudicial foreclosure was wrongful because an assignment by which the foreclosing party purportedly took a beneficial interest in the deed of trust was not merely voidable but void, depriving the foreclosing party of any legitimate authority to order a trustee's sale. The Court of Appeal took the opposite view and, solely on that basis, concluded plaintiff could not amend her operative complaint to plead a cause of action for wrongful foreclosure. We must therefore reverse the Court of Appeal's judgment and allow that court to reconsider the question of an amendment to plead wrongful foreclosure. We express no opinion on whether plaintiff has alleged facts showing a void assignment, or on any other issue relevant to her ability to state a claim for wrongful foreclosure.

## DISPOSITION

The judgment of the Court of Appeal is reversed and the matter is remanded to that court for further proceedings consistent with our opinion.

**WERDEGAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**HUFFMAN, J.**\*

---

\*  Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Yvanova v. New Century Mortgage Corporation

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 226 Cal.App.4th 495
**Rehearing Granted**

_____

**Opinion No.** S218973
**Date Filed:** February 18, 2016

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Russell S. Kussman

_____

**Counsel:**

Tsvetana Yvanova, in pro. per.; Law Offices of Richard L. Antognini and Richard L. Antognini for Plaintiff and Appellant.

Law Office of Mark F. Didak and Mark F. Didak as Amici Curiae on behalf of Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Nicklas A. Akers, Assistant Attorney General, Michele Van Gelderen and Sanna R. Singer, Deputy Attorneys General, for Attorney General of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Lisa R. Jaskol; Kent Qian; and Hunter Landerholm for Public Counsel, National Housing Law Project and Neighborhood Legal Services of Los Angeles County as Amici Curiae on behalf of Plaintiff and Appellant.

The Sturdevant Law Firm and James C. Sturdevant for National Association of Consumer Advocates and National Consumer Law Center as Amici Curiae on behalf of Plaintiff and Appellant.

The Arkin Law Firm, Sharon J. Arkin; Arbogast Law and David M. Arbogast for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Houser & Allison, Eric D. Houser, Robert W. Norman, Jr., Patrick S. Ludeman; Bryan Cave, Kenneth Lee Marshall, Nafiz Cekirge, Andrea N. Winternitz and Sarah Samuelson for Defendants and Respondents.

Pfeifer & De La Mora and Michael R. Pfeifer for California Mortgage Bankers Association as Amicus Curiae on behalf of Defendants and Respondents.

Denton US and Sonia Martin for Structured Finance Industry Group, Inc., as Amicus Curiae on behalf of Defendants and Respondents.

Goodwin Proctor, Steven A. Ellis and Nicole S. Tate-Naghi for California Bankers Association as Amicus Curiae on behalf of Defendants and Respondents.

Wright, Finlay & Zak and Jonathan D. Fink for American Legal & Financial Network and United Trustees Association as Amici Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Richard L. Antognini
Law Offices of Richard L. Antognini
2036 Nevada City Highway, Suite 636
Grass Valley, CA  95945-7700
(916) 295-4896

Kenneth Lee Marshall
Bryan Cave
560 Mission Street, Suite 2500
San Francisco, CA  94105
(415) 675-3400